# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

LUIS SANCHEZ,

                                        Plaintiff,

                    -vs-

OFFICER ZIOLKOWSKI, OFFICER BRUN, OF-
FICER FITCH, SGT. JOHN DOE, NURSE DONNA
BONNING, NURSE JANE DOE, NURSE HEWLEY,[1]
and OFFICER JOHN DOE 1–6,

                                        Defendants.

CORRECTED
DECISION AND ORDER

13-CV-6657-CJS

---

## APPEARANCES

For Plaintiff:             Luis Sanchez *pro se*
                           P.O. Box 120224
                           Brooklyn, NY 11212

For Defendants:            Bernard F. Sheehan, A.A.G
                           NYS Attorney General's Office
                           Department of Law
                           144 Exchange Boulevard
                           Rochester, NY 14614
                           (585) 327-3214

## INTRODUCTION

   **Siragusa, J.** This prisoner civil rights action is before the Court on Defendants'

motion for summary judgment filed on March 31, 2015, ECF No. 9. For the reasons

stated below, Defendants' application is granted.

---

[1] The spelling of this defendant's name is incorrect and should be "Hawley." *See* Hawley
Decl., Mar. 31, 2015, ECF No. 9-5.

# BACKGROUND

Pursuant to the local rules, Defendants filed a statement of fact, and served Plaintiff with a copy, as well as with a notice advising Plaintiff of the need to respond to the statement of facts. The statement advised Plaintiff using this language:

Any party moving for summary judgment against a party proceeding pro se shall serve and file as a separate document, together with the papers in support of the motion, a "Notice to Pro Se Litigant Opposing Motion For Summary Judgment: in the form indicated below. Where the pro se party is not the plaintiff, the movant shall amend the form notice as necessary to reflect that fact.

Notice to Pro Se Litigant Opposing Motion For Summary Judgment

Plaintiff is hereby advised that the defendant has asked the Court to decide this case without a trial based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS PLAINTIFF ASSERTS IN HIS/HER COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE/SHE DOES NOT RESPOND TO THIS MOTION by filing his/her own sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial.

In short, Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in the complaint. Rather, plaintiff must submit evidence, such as witness statements or documents countering the facts asserted by the defendant and raising issues of fact for trial. Any witness statements which may include plaintiff's own statements, must be in the form of affidavits. Plaintiff may file and serve affidavits that were prepared specifically in response to defendant's motion for summary judgment.

Any issue of fact that plaintiff whishes to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendant. If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial. Pursuant to Rule 7.1(e) and 56.1 of the Local Rules of Civil Procedure for the Western District of New York, plaintiff is required to file and serve the following papers in opposition to the motion: (1) a memorandum of law containing relevant factual and legal argument; (2) one or more affidavits in opposition to the motion; and (3) a separate, short, and concise statement of the material facts as to which plaintiff contends there exists a genuine issue to be

2

tried followed by citation to admissible evidence.

In the absence of such a statement by plaintiff, all material facts set forth in defendant's statement of material facts not in dispute will be deemed admitted. A copy of the Local Rules to which reference has been made may be obtained from the Clerk's Office of the Court.

If plaintiff has any questions, he/she may direct them to the Pro Se Office. Plaintiff must file and serve any supplemental affidavits or materials in opposition to defendant's motion no later than the date they are due as provided in Rule 56.1(e) of the Local Rules of Civil Procedure for the Western District of New York.

Def.s' Rule 56.2 Notice to Pro Se Litigants Opposing Summary Judgment, Mar. 31, 2015, ECF No. 9-1. The Court issued a motion scheduling order directing that Plaintiff respond to the motion by May 5, 2015, and set July 30, 2015, as the date for oral argument. To date, Plaintiff has not responded to the statement of facts. The Second Circuit held in *Glazer v. Formica Corp.*, 964 F.2d 149 (2nd Cir. 1992) that,

When a party has moved for summary judgment on the basis of asserted facts supported as required by Fed. R. Civ. P. 56(e) and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party.

*Id.* at 154. Since Plaintiff has not responded, the Court deems the assertions of fact[2] in Defendants' statement admitted for the purposes of this motion.

---

[2] "'[a] court *may* ... strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements.' *Hollander v. American Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir.1999) (emphasis added). However, nothing in the Federal Rules or the Local Rules of this District requires a court to strike such material. *See Sauerhaft v. Board of Educ. of the Hastings–on–Hudson Union Free Sch. Dist.,* 05 Civ. 09087(PGG), 2009 WL 1576467, at *7–8, 2009 U.S. Dist. LEXIS 46196, at *29 (S.D.N.Y. June 2, 2009). Rather, the Court 'may decline to conduct a line-by-line analysis and simply disregard' any material that does not comply with Rule 56(e). *Id.* at *8, 2009 U.S. Dist. LEXIS 46196 at *30; *see also, e.g., LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortgage Lending Inc.,* 04 Civ. 5452(PKL), 2007 U.S. Dist. LEXIS 59303, at *17 (S.D.N.Y. Aug. 13, 2007); *Rus, Inc. v. Bay Indus., Inc.,* 322 F.Supp.2d 302, 307(S.D.N.Y.2003)." *Primmer v. CBS Studios, Inc.,* 667 F. Supp. 2d 248, 254 (S.D.N.Y. 2009).

1.   Defendant Donna Bonning RN is a registered nurse, and she is licensed as a nurse to practice medicine in New York State. Declaration of Donna Bonning RN, dated March 26, 2015, ¶ 2.

2.   Defendant Bonning has been employed as a nurse doctor by the New York State Department of Corrections and Community Supervision (DOCCS) for the past 6 years. Bonning Decl. ¶ 4.

3.   During the relevant period, Defendant Bonning was a nurse assigned to Attica Correctional Facility (Attica). Bonning Decl. ¶ 5.

4.   Defendant Vance Hawley RN is a registered nurse, and he is licensed as a nurse to practice medicine in New York State. Declaration of Vance Hawley RN, dated March 30, 2015, ¶ 2.

5.   Defendant Hawley was assigned as a nurse to Attica in 2010, but he no longer works for Attica or DOCCS. Hawley Decl. ¶ 4.

6.   During the relevant period, Defendant Hawley was a nurse assigned to Attica. Hawley Decl. ¶ 4.

7.   Mr. Sanchez, who is the Plaintiff in this matter, was an inmate at Attica during the relevant time. Bonning Decl. ¶ 6; Hawley Decl. ¶ 6.

8.   Plaintiff has since been released from custody.

9.   Mr. Sanchez claims that he was assaulted on December 30, 2010 by corrections officers while he was at Attica. Bonning Decl. ¶ 8; Hawley Decl. ¶ 8; Docket No. 1 at 12.

10.   He claims that his nose was broken and that he needed surgery to repair the damage. Bonning Decl. ¶ 9; Hawley Decl. ¶ 9; Docket No. 1 at 12.

11.   Mr. Sanchez claims that, after he was assaulted, Defendants Bonning and Hawley failed to provide him adequate medical treatment. Bonning Decl. ¶ 10; Hawley Decl. ¶ 10; Docket No. 1 at 14-15, 18-19.

12.   Plaintiff's claims are not true.

13.   Attached as Exhibit A to the Bonning Declaration and to the Hawley Declaration are true and correct copies of Mr. Sanchez's use of force examination report and Ambulatory Health records. Bonning Decl. ¶ 13; Hawley Decl. ¶ 13.

14.   The pages of Exhibit A have been numbered in the lower right corner for ease of reference.

15.   Exhibit A to the Bonning Declaration is the same as Exhibit A to the Hawley Declaration.

16.   As shown below and in Exhibit A, Plaintiff was provided proper and adequate medical care while he was at Attica Correctional Facility.

17.   There was a use of force involving Mr. Sanchez on December 30, 2010. Bonning Decl. ¶ 15; Hawley Decl. ¶ 15; Exhibit A at 1-2, 4.

18.   According to regular procedure, Nurse Bonning examined Mr. Sanchez in the Attica emergency room after this use of force. Bonning Decl. ¶ 16; Hawley Decl. ¶ 16; Exhibit A at 1-3.

19.   Nurse Bonning had an adequate opportunity to examine Mr. Sanchez and to listen and note his medical complaints. Bonning Decl. ¶ 17.

20.   Nurse Bonning noted that Mr. Sanchez had drying blood on his nose and around his mouth. Bonning Decl. ¶ 18; Hawley Decl. ¶ 17; Exhibit A at 1-4.

21.   Nurse Bonning noted there was no evidence of ecchymosis (bruising) or erythema (redness) on any open area. Bonning Decl. ¶ 19; Hawley Decl. ¶ 18; Exhibit A at 1-4.

22.   Nurse Bonning also did not note any active bleeding. Bonning Decl. ¶ 20; Hawley Decl. ¶ 19; Exhibit A at 1-2.

23.   Nurse Bonning cleansed the areas that showed blood and instructed Mr. Sanchez to follow up with sick call as needed. Bonning Decl. ¶ 22; Hawley Decl. ¶ 20; Exhibit A at 1-4.

24.   There were no signs that Mr. Sanchez had a broken nose or any serious injury. Bonning Decl. ¶ 23; Hawley Decl. ¶ 21.

25.   Mr. Sanchez's nose had been bleeding, but the bleeding had subsided. Bonning Decl. ¶ 24; Hawley Decl. ¶ 22.

26.   Nurse Bonning did not see any signs of swelling or ecchymosis on Mr. Sanchez's nose. Bonning Decl. ¶ 25; Hawley Decl. ¶ 23; Exhibit A at 3-4.

27.   Nurse Bonning was not aware of any serious injury to Mr. Sanchez. Bonning Decl. ¶ 26.

28.   Mr. Sanchez did not appear to be in extreme pain. Bonning Decl. ¶ 27.

29.     In fact, Mr. Sanchez did not complain of pain at all at this time, nor did he complain about his breathing. Bonning Decl. ¶ 28.

30.     After Nurse Bonning's examination, Mr. Sanchez was taken to the Special Housing Unit (SHU). Bonning Decl. ¶ 29; Hawley Decl. ¶ 24; Exhibit A at 5.

31.     Nurse Hawley examined Mr. Sanchez when he arrived at the SHU. Bonning Decl. ¶ 30; Hawley Decl. ¶ 25; Exhibit A at 5.

32.     Nurse Hawley noted that Mr. Sanchez was alert and oriented. Bonning Decl. ¶ 31; Hawley Decl. ¶ 26; Exhibit A at 5.

33.     Nurse Hawley also noted the dried blood on Mr. Sanchez's nose. Bonning Decl. ¶ 32; Hawley Decl. ¶ 27.

34.     Mr. Sanchez was able to dress, undress, and follow all commands without difficulty. Bonning Decl. ¶ 33; Hawley Decl. ¶ 28.

35.     Mr. Sanchez told Nurse Hawley that he had a history of cancer, surgery on both his elbows, and rhinoplasty. Bonning Decl. ¶ 34; Hawley Decl. ¶ 29; Exhibit A at 5.

36.     Mr. Sanchez complained of bilateral elbow discomfort to Nurse Hawley in the Special Housing Unit, but there was no evidence of any ecchymosis or erythema. Bonning Decl. ¶ 21; Hawley Decl. ¶ 30; Exhibit A at 1, 5.

37.     Nurse Hawley also noted that Mr. Sanchez was currently taking Naprosyn, which is a non-steroidal anti-inflammatory drug that is often prescribed for pain relief. Bonning Decl. ¶ 35; Hawley Decl. ¶ 31; Exhibit A at 5.

38.     Nurse Hawley cleared Mr. Sanchez for admission to SHU. Bonning Decl. ¶ 36; Hawley Decl. ¶ 32; Exhibit A at 5.

39.     The next day, December 31, 2011, Mr. Sanchez demanded to see a doctor because he had pain. Bonning Decl. ¶ 37; Hawley Decl. ¶ 33; Exhibit A at 5.

40.     Nurse Hawley instructed Mr. Sanchez to take the Naprosyn as ordered and that a consult was not indicated at that time. Bonning Decl. ¶ 38; Hawley Decl. ¶ 34; Exhibit A at 5.

41.     Two days later, Mr. Sanchez complained of dry skin and discomfort in his nose. Bonning Decl. ¶ 39; Hawley Decl. ¶ 35; Exhibit A at 5.

42.  Nurse Hawley explained that some discomfort was to be expected as the altercation was only 3-4 days prior. Bonning Decl. ¶ 40; Hawley Decl. ¶ 36; Exhibit A at 5.

43.  Nurse Hawley instructed Mr. Sanchez to take the Naprosyn as ordered for pain relief. Bonning Decl. ¶ 41; Hawley Decl. ¶ 37; Exhibit A at 5.

44.  On January 7, 2011, Mr. Sanchez again demanded to see a doctor for injuries he claimed arose from the use of force. Bonning Decl. ¶ 42; Hawley Decl. ¶ 38; Exhibit A at 6.

45.  On January 11, 2011, Mr. Sanchez complained of nasal pressure. Bonning Decl. ¶ 43; Hawley Decl. ¶ 39.

46.  Mr. Sanchez also indicated that he was supposed to get a CT scan of his chest because he gets a yearly scan based on his history of Hodgkins Lymphoma. Bonning Decl. ¶ 44; Hawley Decl. ¶ 40; Exhibit A at 6.

47.  It was noted that Mr. Sanchez was scheduled to be seen by a provider the next day so he could discuss the CT scan at that time. Bonning Decl. ¶ 45; Hawley Decl. ¶ 41; Exhibit A at 6.

48.  The following day, on January 12, 2011, Mr. Sanchez was seen by a physician's assistant. Bonning Decl. ¶ 46; Hawley Decl. ¶ 42; Exhibit A at 6.

49.  The physician's assistant noted that Mr. Sanchez said that he had been hit on the nose on December 30, 2010. Bonning Decl. ¶ 47; Hawley Decl. ¶ 43; Exhibit A at 6.

50.  The physician assistant noted that Mr. Sanchez said that he had bleeding, denied bruising, and at the time had nasal pain and sinus pressure. Bonning Decl. ¶ 48; Hawley Decl. ¶ 44; Exhibit A at 6.

51.  Mr. Sanchez also denied fever, chills and discharge. Bonning Decl. ¶ 49; Hawley Decl. ¶ 45; Exhibit A at 6.

52.  The physician assistant noted that Mr. Sanchez's nose was slightly deviated to the left. Bonning Decl. ¶ 50; Hawley Decl. ¶ 46; Exhibit A at 6.

53.  But she also noted that Mr. Sanchez showed no acute distress, his nose was not tender to touch, and there was no bony abnormality and no swelling. Bonning Decl. ¶ 51; Hawley Decl. ¶ 47; Exhibit A at 6.

54.     Mr. Sanchez's sinus was slightly tender to touch, however. Bonning Decl. ¶ 52; Hawley Decl. ¶ 48; Exhibit A at 6.

55.     The physician assistant diagnosed that Mr. Sanchez had acute sinusitis and nasal pain. Bonning Decl. ¶ 53; Hawley Decl. ¶ 49; Exhibit A at 6.

56.     She prescribed an x-ray of his nose, as well as that he should take biaxin (an antibiotic), drink more fluids, take motrin, and return to sick call if he did not get better or got worse. Bonning Decl. ¶ 54; Hawley Decl. ¶ 50; Exhibit A at 6.

57.     Two weeks later, on January 27, 2011, Mr. Sanchez transferred out of Attica. Bonning Decl. ¶ 55; Hawley Decl. ¶ 51; Exhibit A at 7.

58.     Mr. Sanchez did not note any other complaints during those weeks. Bonning Decl. ¶ 56; Hawley Decl. ¶ 52; Exhibit A at 6-7.

59.     Nurse Bonning and Nurse Hawley did not falsify any of Mr. Sanchez's medical records. Bonning Decl. ¶ 57; Hawley Decl. ¶ 53.

60.     Nurse Bonning and Nurse Hawley reported all of the complaints that Mr. Sanchez reported to them. Bonning Decl. ¶ 58; Hawley Decl. ¶ 54.

61.     Nurse Bonning and Nurse Hawley did not fail to record any of Mr. Sanchez's complaints or any injuries that they saw. Bonning Decl. ¶ 59; Hawley Decl. ¶ 55.

62.     Neither Nurse Bonning nor Nurse Hawley is aware of anyone falsifying Mr. Sanchez's medical records or failing to record any of Mr. Sanchez's injuries. Bonning Decl. ¶ 60; Hawley Decl. ¶ 56.

63.     Nurse Bonning and Nurse Hawley never denied Mr. Sanchez any medical treatment. Bonning Decl. ¶ 61; Hawley Decl. ¶ 57.

64.     Nurse Bonning and Nurse Hawley are not aware of anyone denying Mr. Sanchez medical treatment. Bonning Decl. ¶ 62; Hawley Decl. ¶ 58.

65.     Nurse Bonning and Nurse Hawley did not see any evidence that Mr. Sanchez was in extreme pain. Bonning Decl. ¶ 63; Hawley Decl. ¶ 59.

66.     At no point did Nurse Bonning or Nurse Hawley act in any way wantonly or maliciously towards Mr. Sanchez. Bonning Decl. ¶ 64; Hawley Decl. ¶ 60.

67. Nurse Bonning and Nurse Hawley only tried to properly assess and treat Mr. Sanchez' medical complaints. Bonning Decl. ¶ 65; Hawley Decl. ¶ 61.

68. Defendants respectfully submit that Nurse Bonning and Nurse Hawley and the rest of the staff at Attica properly addressed Plaintiff's medical needs, and accordingly request that Plaintiff's claims against Nurse Bonning and Nurse Hawley be dismissed.

Plaintiff's complaint, filed on December 16, 2013, ECF No. 1, contained claims of excessive force, failure to protect, retaliation, and lack of medical care. The Court discussed the nature of the claims in its initial order:

> Plaintiff alleges that on December 30, 2010, he was assaulted by corrections officers at Attica, suffering serious injury. He states that his nose was broken in the incident and surgery was then required to repair the damage. Plaintiff also states that prior to the assault, he had been threatened for testifying at another inmate's hearing against officer Defendant John Doe 1. Plaintiff states that he was assaulted in retaliation for his testimony at the hearing.
>
> Plaintiff identifies his legal claims as breach of duty to protect, retaliation, and failure to administer adequate medical care. A review of Plaintiffs allegations indicate he is also alleging a claim for use of excessive force. . . .

Decision and Order 3, Jun. 16, 2014, ECF No. 3. After screening, the Court permitted the following causes of action to proceed: (1) Plaintiff's claim of excessive force against defendants Officer Ziolkowski, Officer Brun, Officer Fitch, Sgt. John Doe 2, and John Does 1, 3, 4, 5, and 6; (2) Plaintiff's medical care claim against defendants Donna Bonning (Jane Doe 1), Nurse Jane Doe 2, and Nurse Hawley; (3) Plaintiff's retaliation claim against defendant John Doe 1. The Court dismissed Plaintiff's failure to protect claim without prejudice, and dismissed his retaliation claims against all but John Doe 1.

## STANDARDS OF LAW

### Summary Judgment

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is enti-tled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "For the court to grant summary judgment, the court must conclude--without resolving any fact disputes--that the movant 'must prevail as a matter of law.'" 11 Moore's Federal Practice § 56.21 (Mat-thew Bender 3d ed.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert. denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all rea-sonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993).

The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1)(B). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

## ANALYSIS

### Official Capacity Claims

Plaintiff brought his claims against Defendants in both their official and individual capacities. Compl. 3–4.[3] His complaint seeks money damages. *Id.* 19. The Supreme Court in *Kentucky v. Graham*, 473 U.S. 159 (1985) held that:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, *e.g., Scheuer v. Rhodes,* 416 U.S. 232, 237–238, 94 S. Ct. 1683, 1686–1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978).

*Graham*, 473 U.S. at 165-66.

In this case, the State of New York is the government agency by which each defendant was employed when allegedly depriving Plaintiff of his constitutional rights. Consequently, Plaintiff's attempt to sue each defendant in his or her official capacity is an attempt to sue the State of New York. The Eleventh Amendment to the Constitution reads as follows: "The Judicial power of the United States shall not be construed to ex-

---

[3] Because Plaintiff did not number all the pages of his complaint and its attachments, the Court will use the page numbering assigned by the portable document format software, which numbered each page sequentially, regardless of the page numbering on the face of the document submitted by Plaintiff.

tend to any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Supreme Court has held that, "absent waiver by the State or valid congressional

override, the Eleventh Amendment bars a damages action against a State in federal

court." *Graham*, 473 U.S. at 169 (citations and footnote omitted). This lawsuit is brought

pursuant to 42 U.S.C. § 1983. By enacting § 1983, Congress did not override a state's

Eleventh Amendment immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66

(1989). Consequently, Plaintiff's claims against Defendants in their official capacities

must be dismissed.

***Plaintiff's Medical Claims***

The Complaint purports to state an Eighth Amendment "deliberate indifference"

medical claim, and the law concerning such claims is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate
> medical care, a prisoner must prove deliberate indifference to his serious
> medical needs. This standard incorporates both objective and subjective
> elements. The objective 'medical need' element measures the severity of
> the alleged deprivation, while the subjective 'deliberate indifference' ele-
> ment ensures that the defendant prison official acted with a sufficiently
> culpable state of mind.

> Because the Eighth Amendment is not a vehicle for bringing medical mal-
> practice claims, nor a substitute for state tort law, not every lapse in prison
> medical care will rise to the level of a constitutional violation. [T]he Su-
> preme Court [has] explained that the Eighth Amendment's prohibition on
> cruel and unusual punishments encompasses the deliberate failure to
> treat a prisoner's serious illness or injury resulting in the infliction of un-
> necessary pain and suffering. Because society does not expect that pris-
> oners will have unqualified access to health care, a prisoner must first
> make this threshold showing of serious illness or injury in order to state an
> Eighth Amendment claim for denial of medical care. Similarly, a prisoner
> must demonstrate more than an inadvertent failure to provide adequate
> medical care by prison officials to successfully establish Eighth Amend-
> ment liability. An official acts with the requisite deliberate indifference
> when that official knows of and disregards an excessive risk to inmate
> health or safety, a state of mind equivalent to the familiar standard of

'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted).

In his complaint, Plaintiff complained about the lack of treatment for the injury to his nose, allegedly broken when one of the defendants assaulted him. The relevant allegations in his complaint are as follows:

14. In the facility E.R. where two female nurses, Jane Doe 1 & 2, did not attend proper medical attention but vital signs and not attending my medical need, nor reporting anything. I told them the situation i.e. that taking any consideration to check my nose which I stated to them I had surgery for deviated septum. They wrote other (see copies of med report) report related to bleeding. No ex-ray where [sic] done on my face to see if anything was in danger.

15. The bruises on my body were never checked nor reported in paper. The blood was cleaned off to make it look good in camara [sic] and was [I] was given asprin [sic] for pain. It did not help. I was then sent to SHU, my clouths [sic] were removed and dumped in the garbage.

16. I continued to complained [sic] while I was in SHU. Requested to see nurse to request a doctor to request for a specialist going by procedures. Then wrote to the nurse administrator requesting the above mention respectfully. When I did both doctor & specialist sawed [sic] I had nothing wrong. But yet I had surgery for the (trauma) attack by Officer Ziolkowski. I was moved about 30 days later to Southport Correctional Facility. After all my complaints with problems sleeping & pain finally doctors in Southport C.F. sent me to a specialist in Albany Medical Center (see medical report to describe my undergoing surgery). I had part of piece of my rib cartalige [sic] removed to place it in my nose. I went to lots of pain for recovery, especially the attack official did to me. Till this day I'm still complaining of complications & requesting for a specialist to analyse [sic] me.

17. On January 2nd 2011 plaintiff requested to be seen by nurse complaining of my nose bleed & pain. That morning nurse Hewley [sic] came, plaintiff explained of complication of nose bleed, lack of sleep, pain, pressure on eyes & headache. Plaintiff requested to be seen by doctors & a pain reliever as well as medication for dry skin & skab [sic] wounds, & dry lip. Defendant walked away stating "I'm not putting you to see a doctor" & ignored my request.

Compl. at 14–15. In her declaration, Donna Bonning, R.N. ("Bonning") asserts that she

provided proper care to Plaintiff after the alleged assault of December 30, 2010. Bonning examined Plaintiff at Attica's emergency room after the use of force and listened to his medical complaint. Bonning Decl. ¶¶ 8–17, Mar. 31, 2015, ECF No. 9-4. She noted drying blood on his nose and around his mouth, but "saw no evidence of ecchymosis (bruising) or erythema (redness) on any open area." *Id.* ¶¶ 18 & 19. She relates that she did not see evidence of a broken nose, nor did Plaintiff appear to be in extreme pain. *Id.* ¶¶ 23 & 27. At the time of the examination, Plaintiff did not complain of pain or about his breathing. *Id.* ¶ 28. Bonning noted that Plaintiff told her he had a history of rhinoplasty. *Id.* ¶ 34.

The medical records attached to Bonning's declaration show that defendant Vance Hawley ("Hawley") cleared Plaintiff for admission to SHU on December 30, 2010, and that Plaintiff was taking Naprosyn, which she noted that the pharmacy would refill that day. An entry dated December 31, 2010, showed that Hawley saw Plaintiff for his complaints of pain and ordered him to continue taking Naprosyn. Hawley also noted that on January 2, 2010 (the date written on the report, but is probably January 2, 2011) he saw Plaintiff for complaints of pain and told him that he should expect to feel pain after the use of force incident, and ordered him to take the Naprosyn for pain. On January 12, 2011, Plaintiff was seen by a physician's assistant who examined Plaintiff's nose, noted it was slightly deviated to the left, but noted also that Plaintiff showed no acute distress, that his nose was not tender to the touch, and had no bony abnormality or swelling. The physician's assistant did noted tenderness in Plaintiff's sinuses, and diagnosed acute sinusitis, and then ordered an x-ray of his nose. Hawley Decl. ¶¶ 42–50, Mar. 31, 2015, ECF No. 9-5.

Disagreements over treatment do not rise to the level of a Constitutional viola-
tion. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established
that mere disagreement over the proper treatment does not create a constitutional
claim."). Similarly, negligence constituting medical malpractice, without more, will not
establish a constitutional claim. *Id.* (citation omitted).

In this context, disagreements over treatment include disagreements over
whether the inmate needs to be treated by a specialist. *See, Sonds v. St. Barnabas
Hosp. Correctional Health Services*, 151 F.Supp.2d 303, 312 (S.D.N.Y. 2001)
("[D]isagreements over medications, diagnostic techniques (*e.g.*, the need for X-rays),
forms of treatment, or the need for specialists or the timing of their intervention, are not
adequate grounds for a Section 1983 claim. These issues implicate medical judgments
and, at worst, negligence amounting to medical malpractice, but not the Eighth Amend-
ment.") (citation omitted).

Defendants uncontroverted evidence establishes that they are entitled to judg-
ment. Plaintiff has failed to raise a material issue of fact and the evidentiary proof before
the Court leads only to the conclusion that defendants Bonning (Jane Doe 1), and Haw-
ley, were not deliberately indifferent to Plaintiff's serious medical need.

## CONCLUSION

For the reasons above, Defendants' application for summary judgment is grant-
ed. The claims against all parties in their official capacities are dismissed. Defendants
Bonning and Hawley are entitled to judgment on Plaintiff's deliberate indifference
claims, and the Clerk is directed to enter judgment for both.

The following claims may go forward: (1) Plaintiff's claims of excessive force against defendants Officer Ziolkowski, Officer Brun, Officer Fitch, Sgt. John Doe 2, and John Does 1, 3, 4, 5, and 6; (2) Plaintiff's medical care claim against defendants Nurse Jane Doe 2; and (3) Plaintiff's retaliation claim against defendant John Doe 1.

IT IS SO ORDERED

Dated:   July 14, 2015
            Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge